**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In re:<br><br>BLUESTEM SYSTEMS, LLC,<br>Debtor. | Case No. BK 26-81186-BSK<br>Chapter 11 |

**DEBTOR'S OBJECTION AND RESISTANCE TO MOTION TO DETERMINE DEBTOR'S STATUS AS A SINGLE ASSET REAL ESTATE DEBTOR AND TO REQUIRE COMPLIANCE WITH SECTION 362(d)(3)**

Bluestem Systems, LLC, debtor and debtor-in-possession ("Debtor") in the above-captioned Chapter 11 case, submits this objection and resistance (the "Objection") to the M*otion to Determine Debtor's Status as a Single Asset Real Estate Debtor and to Require Debtor to Comply with Section 362(d)(3) of the Bankruptcy Code* (Doc. 11, hereinafter the "Motion") filed by Settje Agri-Services & Engineering Inc. ("Settje") and PorkPro Investments, LLC ("PorkPro," and together with Settje, the "Movants"). In support of this Objection, Debtor respectfully states as follows:

**Introduction**

1. On October 7, 2026 (the "Petition Date") Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code" or "Code") in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court"). Debtor is a Nebraska limited liability company that owns and participates in the operation of a hog confinement facility in Cuming County, Nebraska (the "Property"), with its principal place of business in Howells, Nebraska. Debtor leases the Property, together with related equipment, to its tenant, and the Property generates monthly rental income (the "Rents").

2. Debtor remains in possession of its assets and continues to operate as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3. The Motion asks the Court to brand the Debtor a "single asset real estate" debtor ("SARE") and to subject it to the accelerated requirements of 11 U.S.C. § 362(d)(3). The Motion cites cases that recognize the SARE definition reaches only a passive owner that does nothing but collect rent on improved real estate. Debtors that conduct active, substantial business on or in connection with the property do not fall within the definition of a SARE.

4. The Debtor does more than collect Rents. Under the operative Lease, the Debtor (a) bears its own continuing obligation to remove all manure from the Premises on a timely basis, which it discharges through a third-party contractor and from which it realizes economic value; and (b) performs, at its sole expense, all structural repairs to and maintenance of the facility, including replacement of failed slat sections on short notice. These are "substantial business" activities "other than the business of operating the real property and activities incidental thereto," 11 U.S.C. § 101(51B), and they take the Debtor outside the SARE definition. Because the predicate SARE determination fails, § 362(d)(3) does not apply, and the Motion should be denied.

## FACTUAL BACKGROUND[1]

5. The Debtor, as Lessor, and Platte Center West, LLC, as Lessee (the "Tenant"), are parties to a Lease dated as of October 1, 2020 (the "Lease"). The Lease is not a passive real-estate lease. In addition to leasing the real estate and buildings, it obligates the Debtor to perform several ongoing, active undertakings.

6. **Manure removal and disposition**. Section 8 of the Lease — titled "Manure Removal" — places the removal obligation on the Debtor, as Lessor, not on the Tenant: "Lessor

[1] The operational facts are supported by a Declaration of Russell J. Vering, the Debtor's Chief Manager (the "Vering Declaration") that will be submitted prior to the hearing.

shall be responsible for removing all manure from the Premises on a timely basis." (Lease at 3) The Debtor is also the beneficiary of a dedicated Easement for Land Application of Livestock Manure. (Motion at 3) The Debtor discharges its removal obligation by engaging a third-party contractor that removes and land-applies the manure, and the Debtor solicits farmers who use the manure as fertilizer. The contractor's charge for removal and delivery is offset against the farmers' payment for the manure, so that the Debtor's removal cost is satisfied and the economic value of the manure is realized in the Rent. The Debtor also devotes ongoing effort to maintaining the systems that handle and store the manure the Tenant's hogs produce.

7. **Facility maintenance.** Section 7.A obligates the Debtor, as Lessor, to "make all structural repairs to the Premises (including roof, foundation, structural supports, structural elements and slat support columns)," to "maintain all structural components of the Premises in good order and repair at Lessor's sole expense," and to replace any slat sections that "fail to safely support the livestock," on five days' notice. (Lease at 2)

8. The Movants acknowledge that it is the Tenant, not the Debtor, that raises the swine on the Property. (Motion at 3) But the Motion does not grapple with the Debtor's own active obligations under the Lease set out above. The Lease sets a single annual rental of $401,700.00 that compensates the Debtor not only for the real estate but also for the Debtor's performance of its manure-removal and structural-maintenance obligations. (Lease at 1-2) The Motion asserts only that the Debtor "conducts no business on the Property other than leasing the Property to the Tenant." (Motion at 3) That assertion is incorrect.

## LEGAL STANDARD

9. The Bankruptcy Code defines "single asset real estate" as "real property constituting a single property or project . . . which generates substantially all of the gross income

of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." 11 U.S.C. § 101(51B). Courts within the Eighth Circuit apply the three-part test the Movants themselves invoke: the debtor must (1) own real property constituting a single property or project, (2) which generates substantially all of the debtor's gross income, and (3) "on which no substantial business is conducted other than the business of operating the real property and activities incidental thereto." *In re Iowa Hotel Investors, LLC*, 464 B.R. 848, 851 (Bankr. N.D. Iowa 2011) (quoting *In re Scotia Pacific Co., LLC*, 508 F.3d 214, 220 (5th Cir. 2007)). "If a debtor fails to meet any prong, it is not a [single asset real estate debtor]." *Id.*

10. The dispositive inquiry under the third prong is whether the debtor conducts an active business rather than serving as a mere passive income generator. In *Iowa Hotel Investors*, the court declined to designate the debtors' cases as single asset real estate because the movant "fail[ed] to show" that no substantial business was being conducted; the debtors' operations instead "constitute[d] something more than 'operating the real property and activities incidental thereto." *In re Iowa Hotel Invs., LLC*, 464 B.R. at 851–53. As the party seeking the SARE designation, the Movants bear the burden of establishing each element. *See id.*

11. Nebraska bankruptcy law is to the same effect. *In re Prairie Hills Golf & Ski Club, Inc.*, 255 B.R. 228, 229–230 (Bankr. D. Neb. 2000) (hereinafter "*In re Prairie Hills*"). In *In re Prairie Hills* the court explained that "courts generally focus on whether the debtor is conducting substantial other business activity on the property," and that "whether the real estate is used in the operation of a business or whether it is simply held for income" is a "related consideration." *Id.* at 229. Other courts frame the question in terms of value or activity: a debtor that owns only one real-estate-based business must show "it does 'more' than just manage the real property" — that is,

whether it "provide[s] additional value or activities (other than property management) that would remove it from categorization as a 'single asset real estate' project." *In re Celebration Cottage AB, LLC*, 663 B.R. 846, 849 (Bankr. E.D.N.C. 2024) (quoting *In re ENKOGS1, LLC*, 626 B.R. 860, 863 (Bankr. M.D. Fla. 2021)). Decisions outside this District are persuasive only, but they apply the same active-versus-passive focus the Eighth Circuit employs.

12. The Fifth Circuit applied the same active-versus-passive line in *In re Scotia Pacific Co., LLC*, 508 F.3d 214 (5th Cir. 2007). Although that decision is persuasive only here, it is instructive. Quoting *In re Club Golf Partners, L.P.*, the court described the definition as reaching "only those debtors who have no revenue from their property except the passive collection of rent from tenants," and as excluding "those entities that undertake and pursue various sorts of active economic, commercial, and business activities on the property." *Id.* at 221 (quoting *In re Club Golf Partners, L.P.*, No. 07-40096, 2007 WL 1176010, at *2 (E.D. Tex. Feb. 15, 2007)). Resting on its own analysis, the court held that the debtor was not a SARE because its "sale of timber is an activity which extends beyond the sale or lease of the underlying land." *Id.* at 224–25.

**ARGUMENT**

13. **The Debtor's obligation to remove and dispose of manure is an active undertaking, not passive rent collection.** Section 8 of the Lease places the obligation to "remov[e] all manure from the Premises on a timely basis" on the Debtor, not the Tenant. (Lease at 3) That is a continuing operational responsibility tied to the day-to-day functioning of a hog-confinement facility permitted for up to 15,000 head, and it is not the "mere receipt of rent." *In re Scotia Pac. Co., LLC*, 508 F.3d at 221. The Debtor discharges the obligation by engaging a third-party contractor to remove and land-apply the manure and by soliciting farmers who use it as fertilizer; the contractor's charge is offset against the farmers' payment, so that the Debtor satisfies

its removal obligation and the economic value of the manure is realized in the Rent. (Vering Decl.) The Debtor also holds a dedicated Easement for Land Application of Livestock Manure that exists to support this activity. (Motion at 3)

14. Active agricultural and byproduct-disposition operations of this kind fall outside the SARE definition. In *In re Prairie Hills*, the court held that a debtor that, among other enterprises, "operates the farmland" and sold crops "does not simply hold a passive real-estate investment" and therefore "does not fit the mold of the single asset real estate cases at which § 362(d)(3) appears to be directed." *In re Prairie Hills*, 255 B.R. at 230. Courts have cautioned against reading § 101(51B) so broadly as to sweep in working agricultural operations: the Fifth Circuit warned that treating such a debtor as a SARE would improperly reach "owners of land . . . who operate sophisticated businesses such as mining, oil and gas drilling, and large commercial farms." *In re Scotia Pac. Co., LLC*, 508 F.3d at 224; *accord In re Scotia Development, LLC*, 375 B.R. 764, 779 (Bankr. S.D. Tex. 2007) (reading the definition to reach a working agricultural operation "would expand the Code section to include all farms and ranches other than family farms"). The Debtor's removal and disposition of manure from a working hog-confinement facility is an activity of that active, operational character.

15. **The Debtor bears the facility's structural repair and maintenance obligations at its own expense.** The Debtor's active role is further confirmed by its ongoing structural obligations. Section 7.A requires the Debtor, as Lessor, to "make all structural repairs to the Premises (including roof, foundation, structural supports, structural elements and slat support columns)," to "maintain all structural components of the Premises in good order and repair at Lessor's sole expense," and to replace any slat sections that "fail to safely support the livestock" within five days of notice. (Lease at 2) These are affirmative, recurring duties the Debtor itself

must perform and fund. Together with the Debtor's equipment-leasing and manure-removal obligations, they confirm that the Debtor conducts substantial business beyond operating the real property.

16. **Taken together, the Debtor's activities place it outside the SARE definition, and *In re BowlNebraska* confirms the distinction.** The Movants rely on *In re BowlNebraska*, No. BK09-83398-TJM, 2010 WL 1428843 (Bankr. D. Neb. Mar. 17, 2010), but that decision cuts against them. The court found a SARE there precisely because the debtor "owns improved real estate which it leases" and "does nothing else." *Id.* at *1. Although the premises housed several businesses (a bowling alley, restaurant, video arcade, and go-cart track), those "separate types of revenue generators [were] not even operated by the debtor"; "[t]hey [were] leased to a third party." *Id*. The debtor had no active role in any activity on the property.

17. The Debtor here is the opposite of the *BowlNebraska* debtor. It does not merely own and lease real estate and "do[] nothing else." *Id.* It bears and funds the facility's structural repairs and it bears its own obligation to remove and dispose of the manure generated at the facility, directing the contractor and capturing the economic value of that activity in the Rent. That the Debtor engages a contractor to perform the physical manure work does not make the activity passive; the obligation, and the economic benefit, are the Debtor's own. These combined, continuing undertakings are "substantial business . . . other than the business of operating the real property and activities incidental thereto," and "[i]f a debtor fails to meet any prong, it is not a [single asset real estate debtor]." *In re Iowa Hotel Invs., LLC*, 464 B.R. at 851. The Movants bear the burden of proving otherwise and cannot carry it on this record.

18. **In the alternative, any deadline under § 362(d)(3) should be set to accommodate the Debtor's anticipated sale of assets.** Even if the Court were to determine that

the Debtor is a SARE — which it should not — § 362(d)(3) would not entitle the Movants to immediate relief. That section requires only that, within 90 days after the order for relief (or such later date as the Court fixes for cause) or 30 days after the Court determines that the debtor is subject to the paragraph, the debtor either file a plan of reorganization with a reasonable possibility of being confirmed or commence monthly payments at the nondefault contract rate of interest on the value of the creditor's interest in the real estate. 11 U.S.C. § 362(d)(3); *see In re Heather Apartments Ltd. P'ship*, 366 B.R. 45, 47–51 (Bankr. D. Minn. 2007) (describing the plan-or-payment requirement and the "cause" standard for extending the deadline). The Debtor plans to sell its assets, subject to Court approval and higher and better offers, which the Debtor believes will provide a path to satisfy the secured debt, and the Debtor is prepared to prosecute that sale. Cause therefore exists to set any § 362(d)(3) deadline to coincide with the anticipated sale process. The Court need not reach this issue, however, because the Debtor is not a SARE.

**CONCLUSION**

19. The Motion's request that the Debtor be required to comply with 11 U.S.C. § 362(d)(3) depends entirely on the predicate determination that the Debtor is a SARE. Section 362(d)(3) imposes its accelerated plan-or-payment requirements only on a "debtor" whose case is a single asset real estate case. The SARE provisions "severely limit[]" the class of debtors subject to those "stringent requirements," and courts have "no warrant to expand that definition." *In re Scotia Pac. Co., LLC*, 508 F.3d at 224–225. Because the Debtor is not a SARE, § 362(d)(3) does not apply, and the relief the Motion seeks must be denied.

20. For the foregoing reasons, the Debtor respectfully requests that the Court (a) deny the Motion; (b) determine that the Debtor is not a single asset real estate debtor within the meaning of 11 U.S.C. § 101(51B) and is not subject to 11 U.S.C. § 362(d)(3); (c) in the alternative, if the

Court determines that the Debtor is a single asset real estate debtor, set any deadline under 11 U.S.C. § 362(d)(3) to accommodate the Debtor's planned sale process; and (d) grant such other and further relief as the Court deems just and proper.

DATED this 30th day of October, 2026.

BLUESTEM SYSTEMS, LLC, DEBTOR,

By: /s/ Michael T. Eversden

Michael T. Eversden, #21941
Lauren R. Goodman, #24645
Donald (DJ) Rison, Jr. #27225
McGrath North Mullin & Kratz, PC LLO
1601 Dodge Street, Suite 3700
Omaha, NE 68102
Phone: (402)341-3070
meversden@mcgrathnorth.com
lgoodman@mcgrathnorth.com
drison@mcgrathnorth.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, I caused filing of the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system, which sent notification upon all CM/ECF participants.

/s/ Michael T. Eversden