IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE:<br><br>BLUESTEM SYSTEMS, LLC<br><br>Debtor. | Case No. BK 26-81186-BSK<br><br>(Chapter 11)<br><br>DECLARATION OF ELIJAH J. POFERL REGARDING COMPLIANCE WITH INTERIM ORDER ON CASH COLLATERAL AND FINANCING [DOC. 44] |

1. I am an attorney at Cline Williams Wright Johnson & Oldfather, L.L.P., and serve as counsel for PorkPro Investments, LLC ("PorkPro"), a secured creditor in this case.

2. I make this declaration based on my personal knowledge.

3. On November 3, 2026, the Court entered its Interim Order on Cash Collateral and Financing [Doc. 44] (the "Order") in the Chapter 11 case of Bluestem Systems, LLC (the "Debtor").

4. Paragraph 3 of the Order suspended, pending further order, PorkPro's notice to Platte Center West, LLC (the "Tenant") under Neb. Rev. Stat. § 52-1706, and required PorkPro, within two business days after entry of the Order, to notify the Tenant in writing, enclosing a copy of the Order, that rent under the lease is payable to the Debtor until further order, and to file a copy of the notice.

5. On Thursday, November 5, 2026, which is within two business days after entry of the Order, I prepared and signed a letter on behalf of PorkPro to the Tenant (the "Notice"). The Notice advised the Tenant that, pending further order of the Court, PorkPro's prior notice to the Tenant under Neb. Rev. Stat. § 52-1706 directing that rent be paid to PorkPro is suspended, and that, until further order of the Court, all rent coming due under the Tenant's lease with the Debtor must be paid to the Debtor, and not to PorkPro. A copy of the Order was enclosed with the Notice.

6. On November 5, 2026, I caused the Notice and the enclosed Order to be sent by United States Mail, first-class postage prepaid, to the Tenant at the following addresses, which are the addresses for the Tenant identified in the Order: (a) Platte Center West, LLC, Attn: Mr. Zegers, 3214 25th Street, Columbus, Nebraska 68601; and (b) Platte Center West, LLC, 4438 Old Mill Court, Columbus, Nebraska 68601. A copy of the Notice was also sent by email to Lauren R. Goodman, counsel for the Debtor.

7. In compliance with paragraph 3 of the Order, a true and correct copy of the Notice is attached hereto as **Exhibit A.**

8. I swear or affirm under penalty of perjury that the facts set forth above are true and correct to the best of my knowledge and belief.

Dated: November 5, 2026.

By: /s/ *Elijah J. Poferl*
Elijah J. Poferl, #28289
Counsel for PorkPro Investments, LLC

4900-6174-6142, v. 1

EXHIBIT A

CLINE WILLIAMS
WRIGHT JOHNSON & OLDFATHER, L.L.P.
ATTORNEYS AT LAW
ESTABLISHED 1857
233 SOUTH 13TH STREET
1900 U.S. BANK BUILDING
LINCOLN, NEBRASKA 68508-2095
(402) 474-6900
www.clinewilliams.com

MARK A. CHRISTENSEN
RICHARD P. GARDEN, JR.
SUSAN K. SAPP
KEVIN J. SCHNEIDER
ROCHELLE A. MULLEN
TRENTEN P. BAUSCH
MICHAEL C. PALLESEN
RICHARD P. JEFFRIES
TRENT R. SIDDERS
ANDRE R. BARRY
DAVID J. ROUTH
JASON R. YUNGTUM
MEGAN S. WRIGHT
THERESA D. KOLLER
AUSTIN L. MCKILLIP
KEITH T. PETERS
ANDREW R. WILLIS
TARA A. STINGLEY
SEAN D. WHITE
MICHELLE L. SITORIUS
MICHAEL J. WHALEY
RUSSELL J. SPRAGUE
HENRY L. WIEDRICH
DANIEL W. OLDENBURG
TRAVIS W. TETTENBORN
BEAU B. BUMP
SHANNON E. FALLON
CRISTIN M. MCGARRY
LILY AMARE
JOHN F. ZIMMER, V
NATHAN D. CLARK
ALISON JANECEK BORER
BRIAN P. MORRISSEY
SYDNEY M. HUSS

BRITTNEY M. HOLLEY
ISAIAH J. FROHLING
ALISON D. BASYE
JESSICA K. ROBINSON
NATHANIAL T. HEIMES
HARRISON J. KRATOCHVIL
KEVIN M. FREUDENBURG
STAVROS P. PIPERIS
ROGER D. SACK
MADELINE C. HASLEY
DONALD L. ERFTMIER, III
CAMERON D. SCOTT
MITCHELL T. MOYLAN
ELIJAH J. POPERL
ASHLY J. HELFRICH
MILLA N. FRANK
JOSEPH A. MASI
LINDSEY O. BLUM
CARMELLA M. PERKINS
JACKSON T. BILLINGS
DANTAE S. KNUDSON

OF COUNSEL:

STEPHEN E. GEHRING
ROBERT J. ROUTH
SCOTT D. KELLY
DON R. JANSSEN
GARY R. BATENHORST
RENEE A. EVELAND
DAVID O. COLVER†
DONALD L. ERFTMIER, JR.

†ATTORNEYS ADMITTED IN COLORADO ONLY

November 5, 2026

**Via U.S. Mail**

Platte Center West, LLC
Attn: Mr. Zegers
3214 25th Street
Columbus, NE 68601

With a copy to:
Platte Center West, LLC
4438 Old Mill Court
Columbus, NE 68601

Re: Bluestem Systems, LLC rents – Case No. BK26-81186, United States Bankruptcy Court for the District of Nebraska

Dear Mr. Zegers:

This firm represents PorkPro Investments, LLC ("PorkPro") in the Chapter 11 bankruptcy case of Bluestem Systems, LLC (the "Debtor"), Case No. BK 26-81186, pending in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court"). On November 3, 2026, the Bankruptcy Court entered its Interim Order on Cash Collateral and Financing (the "Order"). A copy of the Order is enclosed with this letter.

As required by the Order, we are notifying you that, pending further order of the Bankruptcy Court, PorkPro's prior notice to Platte Center West, LLC under Neb. Rev. Stat. § 52-1706 directing that rent be paid to PorkPro is suspended. Until further order of the Bankruptcy Court, all rent under your lease with the Debtor coming due must be paid to the Debtor, Bluestem Systems, LLC, and not to PorkPro.

Please send all rent payments to the Debtor at the address provided by the Debtor or the Debtor's counsel.

Please direct any questions regarding payment instructions to the Debtor or its counsel.

This letter is sent to comply with the Order. PorkPro reserves all of its rights, claims, and positions, including its rights to seek further relief from the Bankruptcy Court. If the Bankruptcy Court enters a further order changing where rent is to be paid, we will notify you.

Thank you for your attention to this matter.

Very truly yours,

Elijah J. Poferl
For the Firm

Enclosure

cc: Lauren R. Goodman (via email – lgoodman@mcgrathnorth.com)
PorkPro Investments, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Case No. BK26-81186 |
| | ) | |
| BLUESTEM SYSTEMS, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**Interim Order on Cash Collateral and Financing**

THIS MATTER is before the court on November 2, 2026, on the debtor's emergency motions to use cash collateral and to obtain postpetition credit under 11 U.S.C. § 364(c)(2) to fund an insurance premium. PorkPro Investments, LLC, and Settje Agri-Services & Engineering, Inc., objected. Settje requested a continuance, which is denied. Michael T. Eversden and Lauren R. Goodman appeared for the debtor Bluestem Systems, LLC. Josephine Ellerman appeared for the United States Trustee. Elijah J. Poferl appeared for PorkPro and Settje.

On this record the postpetition rents are property of the estate and PorkPro's cash collateral. Under Nebraska law an assignment of rents is a security interest. The deed of trust agrees. PorkPro's argument that directing the tenant's payments transferred ownership of the rents is contrary to Nebraska law. Because the rents are estate property, the November rent and later rents must be paid to a debtor in possession account ("DIP Account"), not to the creditor contesting the estate's interest.

During the hearing, the debtor limited its cash collateral request to utilities and the down payment for insurance premium financing. The use for utilities is unopposed and approved. Before the court rules on the down payment and financing, the parties must determine whether existing insurance is sufficient or can be appropriately modified.

**Findings of Fact**

*The Property, the Lease, and the Loan*

The debtor owns a hog finishing facility in Cuming County, Nebraska.[1] It leases the facility to Platte Center West, LLC, under a lease running through

---

[1] Doc. #28-2, Ex. A.

October 1, 2036.[2] Base rent is $401,700 a year, payable in monthly installments of $33,475 "in advance on the first day of each month."[3] The lease is the debtor's primary source of cash flow.

The lease requires the tenant procure property insurance. Section 13.B provides:

> Lessee, at Lessee's expense, shall obtain and keep in force during the Term, a policy or policies of insurance which cover loss or damage to the Buildings, Equipment, fixtures, and improvements to the Premises in an amount not less than the full replacement value thereof, as the same may exist from time to time, providing protection against, acts of God or nature, fire, vandalism, and malicious mischief in the names of Lessor and Lessee, as their interests shall appear. Lessor's mortgagee shall be named as the Loss Payee under such policy or policies and Lessor and Lessor's secured Lender shall be the loss payees in connection with any covered loss which occurs to the Buildings, fixtures, equipment (including Equipment) and all improvements; provided Lessee shall first receive loss benefits for any personal property owned by the Lessee. Lessee shall deliver to Lessor copies of policies of insurance required under this paragraph including certificates evidencing the existence and amounts of such insurance.[4]

The tenant pays the premiums as "Additional Rent."[5] The tenant must deliver copies of the policies or certificates, and renewals on request.[6] Either party must deliver an estoppel certificate within ten days of demand,

---

[2] Doc. #28-3, §§ 1, 3.

[3] *Id.* § 4.

[4] *Id.* § 13.B.

[5] *Id.* § 5.B. The lease's internal cross-references do not match its numbering. Section 5.B ties the premiums to insurance "consistent with the terms of Section 11B below." Section 13.C requires delivery of policies "required under Section 12A." Section 14.D allocates proceeds of "the casualty policy required to be carried by Lessee under paragraph 11B above," and refers to property remaining with or removable from the premises "under Paragraph 9D above." But § 11.B governs compliance with law, § 12 has no subsections, and § 9 governs hazardous materials. A renumbering is apparent. Property insurance is now in § 13.B, and alterations and fixtures are in § 11.D. Read in context, the references to insurance can only mean § 13. Regardless, under § 13.B, the tenant must insure the buildings, equipment, fixtures, and improvements at its own expense, and must deliver copies of the policies and certificates to the lessor.

[6] *Id.* § 13.C.

"attesting to the compliance to date with the terms and conditions of this Lease and for such other matters as requested concerning the tenancy."[7] If the lease ends after a casualty, the lessor receives the proceeds of "the casualty policy required to be carried by Lessee" attributable to fixtures, improvements, and other property remaining with the premises.[8]

Rabo AgriFinance, LLC, financed construction of the facility in December 2020 and secured the loan with a Deed of Trust, Assignment of Rents and Security Agreement.[9] The granting clause conveys the property to the trustee "TO SECURE repayment of the indebtedness evidenced by the Note."[10] Section 1 states the debtor "makes the grant, conveyance, transfer and assignment herein, to secure payment and performance" of the secured obligations.[11] Section 4 addresses rents:

> Grantor irrevocably and unconditionally assigns to Beneficiary and grants Beneficiary a security interest in, the Leases; all rents and other benefits derived from the Leases . . . (the "Rents"). Beneficiary may collect Rents with or without taking possession of the Property. Beneficiary confers upon Grantor a license to collect and retain the Rents as they become due and payable, so long as there is no Event of Default (the "License"). If an Event of Default has occurred, Beneficiary may terminate the License without notice to or demand upon Grantor.[12]

When the secured obligations are paid, the trustee reconveys the property.[13] Nebraska law governs.[14]

---

[7] *Id.* § 25.

[8] *Id.* § 14.D.

[9] Doc. #28-2; Doc. #41, Ex. C.

[10] Doc. #28-2, at 2.

[11] *Id.* § 1.

[12] *Id.* § 4.

[13] *Id.* § 32.

[14] *Id.* § 41.

*PorkPro and Settje*

The loan went into default. The parties entered a series of forbearance agreements. The final one ran through March 31, 2026.[15] On February 13, 2026, PorkPro bought the Rabo loan.[16] Four days later, the debtor confessed a $650,000 judgment in favor of Settje, the contractor who built the facility.[17] On February 20, Settje bought property coverage on the facility from Nationwide, naming itself as the insured.[18] On February 26, PorkPro recorded the assignments of the deed of trust and the lease assignment.[19] Settje's president, Dean Settje, is a member of PorkPro.[20]

On February 27, PorkPro's counsel wrote the debtor. The letter said PorkPro redirected the tenant's payments and "[p]ayments from Platte Center West, LLC, will be applied in accordance with the financing documents and forbearance agreements for which PorkPro is the successor and assignee."[21] The letter also said "PorkPro has purchased property insurance from Nationwide" and asked for proof of the debtor's own coverage.[22] On March 2, PorkPro's counsel emailed Ms. Goodman the letter and enclosures. The tenant has paid PorkPro since March 2026.[23]

---

[15] Doc. #41, Ex. C.

[16] Doc. #41, ¶ 6; Doc. #40; ¶ 4.

[17] Doc. #41, ¶ 3 & Ex. A.

[18] Doc. #40, ¶ 6 & Ex. A.

[19] Doc. #41, Ex. C.

[20] Doc. #40, ¶¶ 1-2.

[21] Doc. #41, Ex. C.

[22] *Id.* It is not clear whether the purported insurance default supports a February 27 termination. Under the deed of trust, a covenant default not otherwise described becomes an Event of Default only 30 days after notice. (Doc. #28-2, § 20(f)). The earliest notice in the record is the February 27 letter and March 2 email. An Event of Default under the MCA is also an Event of Default under the deed of trust. (*Id.* § 20(a)). But the MCA defines its Events of Default in a Schedule of Definitions and Covenants incorporated by reference and not in the record. (Doc. #28-1, Art. 2 & Ex. A). The MCA does refer to a "Non-Monetary Default After Notice." (*Id.* § 12.11). Any February termination more likely rests on the maturity payment default; the Construction Line of Credit 1 matured April 1, 2022. (*Id.*, Facility Sheet § 1.07(b).) That default brings the unproduced forbearance agreement back to the center.

[23] Doc. #34, ¶ 5.

*The Bankruptcy Case and the Motions*

The debtor filed this Chapter 11 case on October 7, 2026, the day before a scheduled execution sale on Settje's judgment. The debtor values the facility at $4,700,000. It schedules PorkPro's claim at $4,661,626.94, disputed, and Settje's judgment at $622,501.81. It schedules no cash.[24]

The debtor seeks a determination that the rents are property of the estate, authority for their use under a 13-week budget, a replacement lien for PorkPro "notwithstanding 11 U.S.C. § 552," and an order redirecting the tenant's payments. The budget includes $300 a month for utilities. PorkPro argues the rents are not property of the estate because it terminated the debtor's license and collected the rents before the petition date. It offered an escrow of all rents received after October 7 pending a determination.

At the hearing, the debtor withdrew its interim request except for cash collateral for utilities and for the premium down payment. No party opposed the utility payment. The debtor represented its DIP Account is in place. PorkPro represented it holds no postpetition rent: the tenant paid the October 2026 rent before the petition date, and the November 2026 rent has not been paid.

*Insurance*

Three sources of coverage appear in the record:

*The tenant's coverage.* No one has produced it. The debtor says it "could not confirm" the tenant's insurance was in force.[25] Nothing shows the debtor asked for it.

*The Nationwide coverage.* Settje bought the February 20 policy, naming itself as the insured.[26] It paid $27,469.04 in premiums through October 2026 and

---

[24] Doc. #31, Sch. A/B, Sch. D.

[25] Doc. #28, ¶ 14.

[26] Doc. #40, ¶ 6 & Ex. A. Settje says it bought "forced-placed collateral property coverage" because the debtor had not provided proof of insurance protecting PorkPro's interest, and it advanced the premiums "on behalf of PorkPro." (*Id.* ¶¶ 6, 8). But the policy named Settje, not PorkPro, as the insured. The court assumes Settje had an insurable interest of its own through its judgment lien. Nebraska defines an insurable interest as "every interest in property *or any relation thereto*, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured." Neb. Rev. Stat. § 44-103(13)(a) (emphasis added). It is not clear whether that interest extends to the full value of the real estate, or whether Settje's

says PorkPro must reimburse it.[27] Effective October 20, 2026, Nationwide replaced the coverage with a new policy naming PorkPro as the named insured, through February 20, 2027.[28] The policy schedules one structure, a "finishing barn," with occupancy listed as "Owner," at a location described as "11, Howells, NE 68641" on one acre. It provides $4,500,000 of replacement-cost building coverage with a $150,000 deductible, for a premium of $14,500. The debtor is not an insured or a loss payee.

*The debtor's proposed Southlake coverage.* The debtor's policy begins October 20, 2026, lists a policy number of "TBD," a location of "444 2nd Rd, Howells NE 64641," a $3,200,000 building limit, a $1,300,000 equipment limit, and $100,000 deductibles. The mortgagee, loss payee, and lender's loss payable boxes are blank.[29] The premiums, taxes, and fees total $49,697.50. The finance agreement requires a $14,861.88 down payment and ten monthly payments of $3,664.88 beginning November 20, 2026.[30]

## Conclusions of Law

This court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (D), (M), and (O).

### *The Request for a Continuance Is Denied*

Settje requests a continuance under Neb. R. Bankr. P. 9006-1(A) because the debtor did not tell Settje about the hearing. Under the rule a party may challenge the adequacy of notice and, "for good cause shown, seek a continuance." Settje has not shown good cause. Settje had actual notice. Its counsel of record appeared in this case on October 9, 2026. Counsel received electronic notice of the order setting the hearing and, the same day, filed PorkPro's objection to these motions and the expedited hearing date. Settje's president is a member of PorkPro. And Settje used the time it had, filing a

---

recovery would be limited to the lesser of the unpaid judgment and the lost security value. Nor is it clear whether the debtor can be charged for Settje's policy. The loan documents let the lender buy insurance at the borrower's expense and recover the premiums on demand, and they make premiums incurred to protect the lender's lien a borrower expense. (Doc. #28-1, §§ 7.10, 7.14(c)). Settje was not the lender.

[27] Doc. #40, ¶¶ 6-9.

[28] *Id.* ¶ 10 & Ex. B.

[29] Doc. #28-5.

[30] Doc. #28-6.

nine-page objection and two declarations before the hearing. It appeared through competent counsel.

*The Postpetition Rents Are Property of the Estate*

The debtor may not use cash collateral without consent or court authority. 11 U.S.C. § 363(c)(2). Cash collateral includes rents in which the estate and another entity have an interest. *Id.* § 363(a). Whether the rents are cash collateral therefore turns first on whether they are property of the estate. The debtor asked for the determination. PorkPro bears the burden on the validity, priority, and extent of its interest. 11 U.S.C. § 363(p)(2). This ruling is preliminary, for purposes of interim relief.

The estate includes "all legal or equitable interests of the debtor in property" as of the petition date, and the rents of or from estate property. 11 U.S.C. § 541(a)(1), (6). State law defines the debtor's interest. *Saline State Bank v. Mahloch*, 834 F.2d 690, 692 (8th Cir. 1987) (citing *Butner v. United States*, 440 U.S. 48 (1979)). The deed of trust selects Nebraska law.

PorkPro asserts its prepetition enforcement of its rights in the rents left the debtor with no interest in them.[31] Nebraska law is contrary. It treats an assignment of rents as a security interest. Nebraska is a lien-theory state. The Nebraska Supreme Court, in a decision PorkPro cites, explained:

> In Nebraska, a mortgagee's status is that of a lienholder. See Neb. Rev. Stat. § 76-276 (Reissue 2003). Under this theory, the mortgagee is regarded as owning a security interest in real estate only and the mortgagor retains both the legal title and right of possession. . . . Although title and possession remain in the mortgagor, mortgagees may create a security interest in rents arising from real estate. § 76-276. The security interest may be enforced by the recovery of rents as part of the enforcement of an assignment of rents instrument. Neb. Rev. Stat. § 52-1705 (Reissue 2004).

*24th & Dodge Ltd. P'ship v. Acceptance Ins. Co.*, 690 N.W.2d 769, 773 (Neb. 2005) (citations omitted).

The Nebraska statute governing assignments of rents uses the same vocabulary throughout. A "[s]ecurity interest in rents" is "any interest in rents or leases which secures payment or performance of an obligation." Neb.

---

[31] The court assumes, without deciding, PorkPro validly terminated the license. It is not clear on this record whether the redirection during the forbearance period was proper. *See supra* note 22.

Rev. Stat. § 52-1701(7). The "[a]ssignee" is "the holder . . . of a security interest in rents." *Id.* § 52-1701(1). Recording perfects the security interest against everyone, including a bankruptcy trustee. *Id.* § 52-1704. The statute describes notice to the tenant as a means of enforcing the security interest:

> An assignee may enforce a security interest in rents by (1) the appointment of a receiver under applicable law, (2) the recovery of rents as part of the enforcement of an assignment instrument, or (3) as provided in section 52-1706 or under other applicable law. The collection of rents by an assignee in accordance with section 52-1706 shall not be deemed to impose the obligations of a mortgagee or any other person in possession of the real estate on the assignee.

*Id.* § 52-1705. Nothing in the statute says notice to the tenant, or any other enforcement step, converts a security interest into ownership. PorkPro's notice to the tenant enforced its security interest. It did not make PorkPro the owner of the rents.

The deed of trust supports the conclusion. Section 4 "assigns to Beneficiary and grants Beneficiary a security interest in" the leases and rents. The assignment sits inside an instrument whose every grant is made "to secure" the debt, whose receivership proceeds pay the secured obligations, and which ends in reconveyance when the debt is paid. The words "irrevocably and unconditionally" do not change the character of the grant. The granting clause uses the same words in conveying the land itself to the trustee "TO SECURE" the note. The same words in § 4 carry the same meaning. Moreover, PorkPro treated the rents as collateral, not as its own property. Its February 27 letter told the debtor the tenant's payments "will be applied in accordance with the financing documents and forbearance agreements."

A secured creditor's prepetition seizure of collateral does not end the debtor's ownership; the property comes into the estate subject to the creditor's lien. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209-11 (1983). This court applied the same principle to rents before the Nebraska statute existed. *In re MBA Ltd. P'ship*, 157 B.R. 666, 668 (Bankr. D. Neb. 1989). There, the lender enforced its recorded assignment and collected rents before the petition. The court held the postpetition rents were the lender's cash collateral under §§ 363(a) and 552(b), usable by the debtor with adequate protection. *Id. See also In re Olson*, 2009 WL 57026, at *1 (Bankr. D. Neb. Jan. 7, 2009) (treating rents subject to an assignment as cash collateral).[32]

---

[32] The parties cite no decision deciding ownership of rents under the Nebraska statute after notice to the tenant, and the court has found none. In *Olson* the lender

PorkPro points out *Saline* and *In re Anderson*, 50 B.R. 728 (D. Neb. 1985), predate Nebraska's assignment of rents statute. But it does not explain how the statute changes either case to help its position. The statute merely changed how a security interest in rents is perfected and enforced. Before 1993, a lender's interest in rents ripened only through affirmative enforcement. *Saline*, 834 F.2d at 692-94. *Saline* said receivership was the only method by which the mortgagee could "exercise ownership over the rents and profits." *Id.* at 692. The result of that method was a lien: the bankruptcy court "may allow sequestration of the rents and profits . . . as a secured interest," subject to a hearing on the equities under § 552(b). *Id.* at 695-96. If enforcement produced only a lien when enforcement was the only route to an effective interest, a statute making perfection easier does not convert the same interest into ownership. The legislative history confirms the statute is aimed at perfection. *See* John C. Minahan, Jr., *Rents and Profits in Bankruptcy: A Nebraska Primer and Consideration of L.B. 14*, 27 Creighton L. Rev. 158, 168 n.64 (1993) (citing the floor debate and committee hearing on L.B. 14). Writing the year the statute passed, Judge Minahan explained: "If an absolute assignment of rents is intended to secure an obligation, then the assignee is simply a secured creditor, and the debtor has a continuing interest in rents and profits." *Id.* at 164. PorkPro's distinction of *Saline* on its facts fares no better. Each distinction concerns when and how the lender's interest became enforceable. None concerns what the interest is.

PorkPro's authorities are distinguishable. PorkPro relies on *Town Center Flats, LLC v. ECF Com. II LLC (In re Town Center Flats, LLC)*, 855 F.3d 721, 725-28 (6th Cir. 2017), *In re Cordova*, 500 B.R. 701 (D.N.J. 2013), *Imperial Gardens Liquidating Tr. v. Northwest Commons, Inc. (In re Northwest Commons, Inc.)*, 136 B.R. 215 (Bankr. E.D. Mo. 1991), and *In re South Pointe Assocs.*, 161 B.R. 224 (Bankr. E.D. Mo. 1993). None applies Nebraska law.

In *Town Center Flats* the Sixth Circuit followed Michigan case law interpreting Michigan's former statute as transferring ownership once the assignment was recorded and default occurred, notwithstanding the statute's authorization of assignments "as security." 855 F.3d at 725-26. Nebraska has no such decisions. The instrument there was a "present, absolute and executed assignment," and the debtor "irrevocably, absolutely and unconditionally" transferred its rights. *Id.* at 726. The court read the language as evidencing "an intention to transfer ownership." *Id.* The deed of trust here grants a security interest in the same sentence as the assignment.

---

characterized the rents as cash collateral, and in *MBA Ltd. P'ship* no party contended otherwise, so neither decision resolves ownership.

*Cordova* applied New Jersey law to an instrument declaring itself an absolute assignment and not additional security. 500 B.R. at 708-10. Even so, such language does not always control. *See In re South Side House, LLC*, 474 B.R. 391, 410-12 (Bankr. E.D.N.Y. 2012) (holding, under New York lien-theory law, an assignment disclaiming "additional security only" was a pledge for security, and the debtor kept title to the rents despite the lender's prepetition foreclosure action and receiver).

*Northwest Commons* and *South Pointe* are closer. Missouri, like Nebraska, is a lien-theory state, and in both cases the lender notified the tenants before the petition. But the Missouri courts treated notice to tenants as "action equivalent to possession" completing the lender's entitlement to the rents, and likened it to a completed levy on cash, which leaves the debtor no right of redemption. *Northwest Commons*, 136 B.R. at 218-20; *South Pointe*, 161 B.R. at 226-27. Nebraska law does not support the analogy. The statute defines what an assignee holds as a "security interest in rents," an interest "which secures payment or performance of an obligation," and uses the same term for the interest being enforced. Neb. Rev. Stat. §§ 52-1701(1), (7), 52-1705. Collection under § 52-1706 enforces the security interest; nothing in the statute makes it a foreclosure of the rents. And the Eighth Circuit, applying Nebraska law, treated a lender's enforcement as producing "a secured interest" subject to § 552(b). *Saline*, 834 F.2d at 695-96. *South Pointe* also recognized the debtor kept a residual interest in the rents as property of the estate, though it found the interest had no present value on that record. 161 B.R. at 227.

PorkPro argues ownership must be decided on a motion or in an adversary proceeding. For a final determination, PorkPro is correct. A final determination of the validity, priority, or extent of PorkPro's interest requires a motion or an adversary proceeding. Fed. R. Bankr. P. 7001. Nothing in this order prevents PorkPro from filing either. But the court cannot rule on a cash collateral request without deciding, at least preliminarily, whether there is cash collateral. 11 U.S.C. § 363(a), (c)(2); Fed. R. Bankr. P. 4001(b)(2).

On the present record, the postpetition rents, preliminarily, are property of the estate under § 541(a)(6). They are subject to PorkPro's perfected security interest, which continues postpetition under § 552(b)(2), and they are PorkPro's cash collateral under § 363(a). PorkPro has not carried its burden of showing its interest extends to ownership of the rents.

*The Rents Belong in the DIP Account*

A debtor in possession holds estate property as a fiduciary and must segregate and account for cash collateral in its possession. 11 U.S.C.

§§ 1107(a), 363(c)(4). PorkPro holds no postpetition rent. The tenant paid the October rent before the petition date, and the November rent has not been paid. The question is where the November rent and later rents should go.

PorkPro proposes the tenant keep paying PorkPro, which would hold the postpetition rents in escrow pending a determination of the estate's interest. The debtor asks for an order directing the tenant to pay the debtor. Neither proposal accounts for why the tenant pays PorkPro now. It does so only because PorkPro notified it under Neb. Rev. Stat. § 52-1706. Without that notice, the lease makes rent payable to the lessor "or at such other place as Lessor may designate in writing." Lease § 4. And the statute permits a rent party to pay the assignor until it receives the assignee's notice. Neb. Rev. Stat. § 52-1706.

On the present record, the rents coming due after the petition date are property of the estate. PorkPro's continued collection of those rents under its prepetition notice would enforce its lien against estate property, which the automatic stay prohibits. 11 U.S.C. § 362(a)(4). The remedy lies in PorkPro's notice. Suspending the notice, and requiring PorkPro to so tell the tenant, returns the rents to the payee the lease designates. And it places them in the custody the Code assigns, § 363(c)(4).

*Insurance*

A debtor in possession must keep estate property appropriately insured. Failure to maintain appropriate insurance posing a risk to the estate or the public is cause for conversion or dismissal. 11 U.S.C. § 1112(b)(4)(C). The question is not whether the facility must be insured. It must. The question is who should insure it and at whose expense. The record identifies two sources the estate should exhaust before borrowing against cash collateral: the tenant and PorkPro.

Under the lease the tenant, at its own expense, must insure the buildings, equipment, fixtures, and improvements for full replacement value, in the names of the lessor and lessee, with the lessor's mortgagee as loss payee. Premiums are the tenant's obligation as additional rent. The lease treats this policy as the fund for rebuilding after a casualty and gives the lessor the proceeds attributable to property remaining with the premises. The debtor has a contractual right to copies of the policies on request and an estoppel certificate within ten days. Nothing in the record shows the debtor asked.

During the hearing, counsel for the debtor suggested the tenant's obligation covers only the tenant's leasehold interest. The lease says otherwise. A policy insuring only a leasehold would not be measured by "the full replacement

value" of the buildings, would not name the lessor as an insured, and would not name the lessor's mortgagee as loss payee. Whether the tenant actually carries the required coverage is a different question. The debtor must ask it.

PorkPro's Nationwide policy insures $4,500,000 of building value on a replacement-cost basis through February 20, 2027, and its premiums are paid. But it insures PorkPro alone. The debtor, which owns the building and must repair it after a casualty, is neither an insured nor a loss payee. The policy also describes the location as one acre at "11, Howells," schedules a single "finishing barn," and lists the occupancy as "Owner." If PorkPro will voluntarily modify the policy for the estate's protection, the estate may need no policy of its own.

*The Financing Motion Is Deferred*

A debtor in possession may obtain secured credit only with court authority, after notice and a hearing. 11 U.S.C. § 364(c). Whether the credit is necessary depends on how the above insurance questions are answered. The motion is deferred pending the debtor's status reports. Until further order, the debtor may not make payments under the premium finance agreement or grant First Insurance Funding a lien on estate property.[33]

**Conclusion**

IT IS THEREFORE ORDERED:

1. Settje's request for a continuance is denied.

2. For purposes of this interim order, the rents arising under the lease with Platte Center West, LLC, on and after October 7, 2026, are property of the estate under 11 U.S.C. § 541(a)(6) and are PorkPro's cash collateral under 11 U.S.C. § 363(a).

3. Pending further order, PorkPro's notice to Platte Center West, LLC, under Neb. Rev. Stat. § 52-1706 is suspended, and PorkPro may not

---

[33] Section 364(c)(2) permits a lien only on property "not otherwise subject to a lien." The deed of trust reaches "proceeds of and any unearned premiums on any insurance policies covering the Property" and directs casualty proceeds to the beneficiary. (Doc. #28-2, granting clause (n), § 14). The premium finance agreement grants a lien on "loss payments which reduce unearned premiums" and makes the lender a loss payee where premiums could become fully earned on a loss. (Doc. #28-6, § 1). Any renewed request must show the proposed lien does not reach PorkPro's collateral, or must proceed under § 364(d).

demand or accept rent under the lease coming due on or after October 7, 2026. Within two business days after entry of this order, PorkPro must notify the tenant in writing, enclosing a copy of this order, that rent under the lease is payable to the debtor until further order, and must file a copy of the notice. If PorkPro receives rent despite this paragraph, it must deposit the rent into the DIP Account within three business days.

4. The debtor must deposit all rent under the lease coming due on or after October 7, 2026, into its segregated DIP Account. The DIP Account may hold only rents and their proceeds. The debtor may not withdraw funds from the DIP Account except as this or a later order authorizes, and must report every deposit and withdrawal in its monthly operating reports. Rent paid to the debtor discharges the tenant's rent obligation to the extent of the payment as against both the debtor and PorkPro.

5. PorkPro, and Settje to the extent it holds an interest in the rents, retain their liens in the rents to the same extent, validity, and priority as on the petition date. As adequate protection each is granted a replacement lien in postpetition rents to the extent of any diminution in its interest resulting from the use. Nothing in this order limits 11 U.S.C. § 552(b) or any party's rights under 11 U.S.C. § 507(b).

6. The debtor may use cash collateral of up to $300 per month for utilities until the final hearing.

7. The debtor, PorkPro, Settje, and the United States Trustee must immediately meet and confer to determine whether PorkPro will voluntarily modify the Nationwide policy to insure the property of the bankruptcy estate to the satisfaction of the United States Trustee, including (a) verification the insured location matches the legal description of the Cuming County real estate; (b) naming the debtor's bankruptcy estate as an insured and loss payee; (c) confirmation the policy covers all buildings and improvements on the property; and (d) who will pay for the modification and, if not the debtor, whether the cost should be an allowed administrative claim.

8. On or before November 4, 2026, at 4:00 p.m., the debtor must file a status report on insurance stating (a) the result of the meet and confer, (b) the position of the parties regarding the Nationwide policy, and (c) whether the debtor still seeks relief on its motion to obtain postpetition credit.

9. The debtor must immediately make written demand on the tenant under §§ 13.B and C and 25 of the lease for copies of all policies and certificates of insurance covering the property and for an estoppel certificate

addressing the tenant's compliance with § 13. The debtor must determine whether the tenant's coverage satisfies § 13.B of the lease.

10. As soon as the tenant responds to the debtor's demand regarding insurance coverage, the debtor must file a status report, attaching any policies, certificates, or estoppel certificate received.

11. The motion to obtain postpetition credit is deferred pending the status reports. Until further order, the debtor must not make any payment under the premium finance agreement with First Insurance Funding or grant it any lien on property of the estate.

12. The debtor's other requests for interim use of cash collateral, including professional fees, the carve-out, and the budget variance, are reserved for the final hearing.

13. The final hearing on the debtor's motions will be heard on **November 30, 2026, at 1:00 p.m.** in the Omaha courtroom. A separate hearing notice will be entered.

14. The debtor must immediately serve this order on the tenant at 3214 25th Street, Columbus, Nebraska 68601, and at 4438 Old Mill Court, Columbus, Nebraska 68601; and on the holders of the 20 largest unsecured claims and must file a certificate of service.

Dated: November 3, 2026

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Chief Bankruptcy Judge

CLINE WILLIAMS
WRIGHT JOHNSON & OLDFATHER, L.L.P.
STERLING RIDGE
12910 PIERCE STREET, SUITE 200
OMAHA, NEBRASKA 68144-1105

quadient
FIRST-CLASS MAIL
IMI
$001.36º
11/05/2026 ZIP 68508
043M31245433
US POSTAGE

Platte Center West, LLC
Attn: Mr. Zegers
3214 25th Street
Columbus, NE 68601

CLINE WILLIAMS
WRIGHT JOHNSON & OLDFATHER, L.L.P.
STERLING RIDGE
12910 PIERCE STREET, SUITE 200
OMAHA, NEBRASKA 68144-1105

quadient
FIRST-CLASS MAIL
IMI
$001.36º
11/05/2026 ZIP 68508
043M31245433
US POSTAGE

Platte Center West, LLC
4438 Old Mill Court
Columbus, NE 68601